ANDREW CRUMLISH and EDWARD J. McMANUS

*vs.*

THE WILMINGTON & WESTERN RAILROAD COMPANY.

New Castle, Feb. T. 1879.

*Provision in contract for action by arbitrator; finality of award; railroad contract; monthly and final estimates.*

1. Where the parties to a contract have themselves created a tribunal for the adjudication of their rights, and submitted themselves to the decision of an umpire of their own choice, his determination will be final on all matters within the scope of his authority, in the absence of fraud or of such gross mistake as shows that his judgment has not been exercised.

2. Although parties may not oust the courts of jurisdiction over the subject-matter of their contract, they may so bind themselves and prescribe the instruments of evidence as to prevent the court from looking beyond their agreement.

3. When a contract for the construction of a railroad provides that the engineer of the railroad company shall make, and furnish to the contractor, monthly estimates of work done, upon which the com-

pany shall pay a certain per cent, the balance to be retained subject. to payment on completion of the work, upon a final estimate by the engineer; and that such monthly estimates are to be considered as approximate only, and are not to control the final estimate; and that the decision of the engineer shall be conclusive and in the nature of an award,—the omission of the engineer to furnish the contractor with monthly estimates may afford a cause of action as a breach of covenant, but will not support a bill in equity to set aside the final award of the engineer, where the engineer has exercised his judgment and no fraud is shown.

BILL TO SET ASIDE THE AWARD OF AN ARBITRATOR UNDER. A RAILROAD-CONSTRUCTION CONTRACT.—The facts and questions presented sufficiently appear from the opinion.

*George L. Crawford* for the complainants.

*Samuel M. Harrington* and *William C. Spruance* for the defendant.

THE CHANCELLOR.—On the 5th day of July, 1871, the Wilmington & Western Railroad Company and Andrew Crumlish, one of the complainants, executed certain articles of agreement, under their respective seals, by which it was stipulated, among other things, that the said Andrew Crumlish should construct and finish on or before the 20th day of April, 1872, to the satisfaction and acceptance of the engineer, for the time being, of the railroad of said company, all the work necessary to complete the graduations of sections 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 of said road, according to the specifications of said articles of agreement, for which the said company stipulated to pay him at the rates therein set forth.

It was further expressly agreed that no claim for extra work, on the part of Crumlish, should be considered unless done in pursuance of the written directions of the engineer specifically and expressly directing the same to be done as extra work; and that such allowance only as the said engineer should deem just and reasonable should be made therefor in the monthly and final estimates provided for in said article, and in no other mode whatever.

It was further provided that the engineer of the defendant should furnish monthly to each of the contracting parties a written estimate certifying the work done within the month for which it was an estimate, compared with the value of the whole work to be performed by Crumlish, including any reduction or increase of said rates, for changes of alignments or grades which by the covenant he was authorized to make, and also the amount deemed reasonable for any extra work, 80 per cent of which amount it was stipulated the company was to pay in hand, the residue to be retained and paid upon the final completion of the work; and it was expressly covenanted that the said monthly estimates were to be considered as approximate only, and were in no manner to control the final estimate of the whole work to be made by the engineer; and further that any such estimate might be received and corrected in any subsequent monthly estimate.

It was further provided that, upon the completion of the whole work to the satisfaction and acceptance of the engineer, the said engineer should furnish to each of the parties a final estimate showing specifically the work done, designating and distinguishing according to the specifications of the contract, and whether work specified, or extra work, and all materials furnished, and any deduction or increase allowed by the engineer in the rates on account of changes in alignment or grade, and all allowances by the engineer for extra work, and the amount to which Crumlish would be entitled if no payments had been made; and it was provided that, upon the production of the said final estimate, the balance due after deducting former payments should be paid to Crumlish, upon his executing to the company a release, under hand and seal, of all claims and demands arising out of the said contract; and that the payment of such balance should operate as a full and final discharge.

It was further expressly covenanted that the decision of the engineer aforesaid should be final and conclusive, in any dispute which might arise between the parties to their agreement, relative to or touching the same; " and each and every

of said parties do hereby waive any right of action, suit or suits, or any other remedy at law, or otherwise, by virtue of said contract, so that the decision of said engineer shall be in the nature of an award, and be final and conclusive as to the rights and claims of said parties."

Under this contract, and with the rights and liabilities of the parties fixed by it, Andrew Crumlish commenced the work of construction.

By the consent of the company, and in accordance with the stipulations of the covenant, he sublet the construction of sections 12, 13, 14, 15 to his son, Hugh H. Crumlish, by whom they were completed, reserving to himself the work on sections 3, 4, 5, 6, 7, 8, 9, 10, 11.

The work thus parceled was continued until the whole was completed, in the fall of 1872, and on the 8th of November, 1872, J. G. Jackson, the engineer of the company, made final estimates in two parts, — by the one stating in detail, as contemplated by the articles of agreement, the work, labor, materials, and allowance on that portion of the road contained within sections 12, 13, 14, 15, and being the portion sublet to H. H. Crumlish, and therein stating the total estimate as $44,998.65, and the amount previously paid, as $37,743.61, leaving a balance due therein,— $7,255.04 ; and by the other stating in detail the work, labor, materials, and allowances on that portion of the road contained within sections 3, 4, 5, 6, 7, 8, 9, 10, 11, and being the portion worked by Crumlish, and therein stating the total estimate as $106,640.86, and the amount previously paid as $105,133.71, leaving the balance due therein as $1,507.15, or, as appears by a duplicate statement of the same date, $1,508.14,—a discrepancy of 99 cents ; and which the engineer in his revised estimates states to have been the result of a clerical error in the estimate first made.

As to the sum ascertained by the engineer in his estimate on sections 12, 13, 14, 15, there is now no controversy ; it being admitted by the bill that Andrew Crumlish accepted the sum of $7,255.04 in full satisfaction for the construction thereof.

Nor is there any exception that the final estimate provided for by the contract was made in two parts; as this course was manifestly adopted for convenience, assented to by both parties, and accepted as a substantial compliance with the terms of the agreement.

Upon the making by the engineer of the estimate of November 8, 1872, for the work, labor, and materials on sections 3, 4, 5, 6, 7, 8, 9, 10, 11, the complainant Crumlish objected to the amount thereby ascertained to be due to him, and refused to accept the same, claiming that he was entitled to a much larger sum; and at his request another engineer, George Barrett, at various times in the months of December and January, examined and estimated the work done on said sections, by whose calculation the amount due to Crumlish was found to be largely in excess of the sum reported by the engineer of the company.

Upon the report of Barrett, the engineer, Jackson, reviewed his estimate and made an additional report. In this he admitted that the former estimate was erroneous in the omissions of work and materials in the construction of certain bridges and cattle passes, to the amount of $3,376.90, and modified his former estimate to that extent, insisting, however, upon the correction of his former measurements and classifications, changing nothing which he had previously ascertained and reported, only supplying that which had been omitted, and making the total corrected final estimate, $110,018.25 instead of $106,641.35, and the sum due after deducting payments, $4,885.04; and which sum he suggested might be increased by the addition of $792.48, though averring that the complainant was not entitled to it as it was for work done against his orders as the engineer of the company. This estimate Crumlish refused to accept, and having made an assignment to E. J. McManus, the two as complainants filed their bill, in which they pray the final estimate of the engineer of the defendants be set aside and declared null, and that an account may be taken of what is due to Andrew Crumlish on the said sections from 2 to 11 inclusive, and that

the defendant may be decreed to pay the amount which shall be found due, with the costs of suit.

The reasons alleged by the bill for vacating the estimate of the engineer are: 1. One mistake in estimating the work actually done. 2. Fraud on the part of the engineer in fixing the amount of the final estimate in disregarding the monthly measurements and estimates, which alone, it is alleged, furnish the result of any accurate measurements or classifications; and that the reduction was without any principle or fair judgment, and was fraudulent. 3. Because the engineer neglected, or fraudulently omitted, to furnish Crumlish with regular and proper monthly estimates during the months of April, May, June, July, and August, 1872.

The answer of the defendant denies the allegations, and states that no injustice has been done to the complainants by the measurements, classifications, or allowances of the engineer, and stands upon the final estimate as an award, offering to confess judgment in the suit pending in the superior court, for the sum of $5,299.37, with interest from November 8, 1872.

The rights and obligations of the parties rest in their contract. There is no authority in this court to disregard their stipulations; and if by their own agreement they chose an arbitrator to whom their differences were to be referred and by whom they were to be adjusted, his judgment, if insisted on by him, in the absence of fraud, would seem necessarily to be final. To hold otherwise would be to disregard the agreements of the parties, to nullify their solemn covenants, and arbitrarily to substitute another rule of judgment than that which the covenants established for them. These principles are so manifestly right that authority is hardly necessary to be invoked in their behalf.

They are found everywhere laid down, and nowhere more clearly enunciated than in the cases cited by the solicitor for the complainants on the argument.

In the case of *Carter* v. *Carter*, 109 Mass. 309, the rule is there stated: "The decision of the arbitrator upon the ques-

tion submitted to him is final, both upon law and facts, unless otherwise provided by the terms of the submission or of his award, and can be set aside only for exceeding the terms of the submission, for fraud or corruption, or for such mistake as shows that he did not apply the rules which he intended to apply to the decision of the case."

In *Sanborn* v. *Murphy*, 50 N. H. 65, the result of the decision in that State is announced this wise: "If arbitrators acting under a general and unrestricted submission, either do not undertake to govern their action and decision by the rules and principles of law, as applied in the courts, or, intending to decide in accordance with those rules and principles, but also intending, upon due consideration, to act and decide definitely upon the matters before them, without submitting their proceedings and judgment to the court for revision,— their conclusions will not be disturbed, and their award will be sustained."    The only exception to this general rule (and it is one which being clearly sustained would avail to set aside the award) is the case where the arbitrators have manifestly fallen into such an error with regard to the facts or law in the case before them as must have prevented the free and fair exercise of their judgment upon communication to them.

The case of *Monongahela Navigation Co.* v. *Fenlon*, 4 Watts & S. 205, presents many of the features of this controversy.    There were two articles of agreement,— one for the construction of a lock and the other of a dam on the Monongahela River; and the covenants contained the stipulation: "It is also mutually agreed between the parties to these presents that, in any dispute which may arise between the contractors and the company, the decision of the engineer shall be obligatory and conclusive without further recourse or appeal."    The plaintiffs proceeded to work, but before it was completed the company fell short of funds, and resolved to suspend operations.    The engineer made an estimate showing the sum to which the plaintiffs were respectively entitled, to which one of them objected; and the engineer directed his assistants to make a re-examination of the work and correct

any errors. This was made, adopted, and approved by the engineer. The contractors, being still dissatisfied, brought suits against the company; in the court below the defendants requested the court to charge the jury that the estimate of the engineer was conclusive as to the amount of the plaintiffs' claim; but the court was of the opinion that, however much weight the opinion of the engineer was entitled to, it was but evidence, and not conclusive. This was questioned, argued, and decided in the supreme court. The engineer had been examined, and expressed himself satisfied with his award. In the course of the opinion reversing the judgment below, the court says: "In the opinion of the engineer the compensation allowed was liberal and just, made upon fair and equitable principles, was a compensation for all damages suffered in consequence of the suspension and for all work performed by the plaintiffs. But whether this be so is not open to question; he was the umpire between them, and it is not pretended that it was made in bad faith, nor is there evidence of gross mistake."

In *Knox* v. *Symonds,* 1 Ves. Jr. 369, *Lord Chancellor* Thurlow lays down the principle governing the Court of Chancery in England, in these words: "A party to an award cannot come to have it set aside upon the simple ground of erroneous judgment in the arbitrator; for to his judgment they refer their disputes; and that would be a ground for setting aside every award. In order to induce the court to interfere, there must be something more,— as, corruption in the arbitrator, or gross mistake, either apparent upon the face of the award or to be made out by evidence; but in case of mistake it must be made out to the satisfaction of the arbitrator, and the party must convince him that his judgment was influenced by that mistake, and that if it had not happened he should have made a different award."

Such are the principles extracted from the cases cited by the complainants; and, though varying in language, they all agree in the general proposition that where the parties themselves have created a tribunal for the adjudication of their

rights, and submitted themselves to the decision of an umpire of their own choice, his determination will be final on all matters within the scope of his authority, in the absence of fraud or of such gross mistake as shows that the judgment of the arbitrator has not been exercised. The court will not retry the case on its own merits, nor inquire whether another and different award ought to have been made either in increase or diminution of the sum found; for this would simply be to disregard the covenants of the parties, and to substitute another contract for that to which they had agreed, and this where the mode of settling their dispute by arbitration may have been the determining consideration upon which the employment was procured.

The case of *Randel* v. *Chesapeake & Delaware Canal Co.* 1 Harrington, 275, was referred to in the argument. So far as it was cited in reply to the suggestion of the defendant that, as an agreement for arbitration was produced, all jurisdiction of the courts over the subject-matter was ousted, it would furnish an answer if the facts brought the complainants within the reasoning of the opinion. It will be observed, however, that the court was there considering the effect of a mere agreement to refer future differences, and whether such agreement would be a bar to an action for the disputed matter. After holding that such naked agreement, either in case of future or existing disputes, would not be sufficient to oust the jurisdiction of the court, but that a party could revoke his submission and abide his liability for damages for noncompliance with his covenants, the opinion thus proceeds: " We agree so far that, if the engineer or inspector had given his certificate, that certificate, by the agreement of the parties, was conclusive evidence on both; and that in regard to work done, or for other matters within his competency to certify, it was the only species of proof substituted by the agreement of the parties for all other; but if he neglected or refused to certify, then the company became responsible to the plaintiff for all the damages which he had sustained by this neglect or refusal, or for want of this certificate."

It will be seen that there is no discrepancy between the

principle here announced and that held in the Pennsylvania
decision.    Where an award was made in conformity with the
terms of the submission, it was held to be conclusive as to all
matters contained in it; and the distinction is clearly taken
between this state of facts and that of revocation of authority
before award made; and though the parties may not oust
jurisdiction in the court over the subject-matter, they may so
bind themselves and prescribe the instruments of evidence as
to prevent the court from looking beyond their agreement.

The same doctrine rules in the application of the principle
of equity.

The complainant asks that the award may be set aside
because regular monthly estimates were not furnished to the
contractor, Crumlish, by the engineer, during the progress of
the work, as stipulated by the covenant of the defendant in
that behalf.

Undoubtedly it was provided by the articles of agreement
that such estimates should be furnished to each of the parties;
and unless the regular performance of this duty was waived
by the parties, either expressly or implicitly, the failure might
afford a cause of action to the party aggrieved as a breach of
covenant.

Whether it is of any force to avoid the award of the arbi-
trator is a very different matter.    Let us consider what were
the monthly estimates and the object they were designed to
effect.    It was necessary that, during the progress of the
work, Crumlish should be supplied with money in part pay-
ment for the work done, and the company agreed to pay him
80 per cent, reserving 20 per cent until the completion of the
whole work.

To arrive at these sums to the parties it was necessary to
have monthly estimates upon which the payment should be
based and by which they should be graduated, and for this
purpose estimates were provided for; but it was expressly
conceded that these estimates could only be approximately
correct, and as expressly provided that they should not in
any wise control the final estimate upon which only full pay-
ment was to be made; and, further, that the engineer might

correct any error or mistake in the monthly estimate in a subsequent monthly estimate.

Now it is clear that the judgment of the arbitrator was not to be controlled or affected by these monthly estimates, nor can the court go farther than the parties themselves in estimating their value. They were temporary arrangements, approximate in their results, useful as furnishing guidance in making the correct payments of 80 per cent, and for that purpose sufficiently indicating the relative proportions which the work of each month bore to the whole, but were expressly excluded by the stipulators of the covenant as being necessary or affording the reliable data for making up the final estimates; and it may be pertinently inquired if these monthly estimates were so valuable as affording the only reliable evidence of the work, or the classification of that work, that it is possible for the complainant to show *aliunde* that the award made is not reasonable, or to obtain satisfactory evidence as to the value of his work as depending upon quality or classification. It is sufficient, however, to say that the parties did not so regard, but stipulated directly to the contrary; and the court cannot give them a character or function which the agreement excluded.

A careful consideration of the testimony fails to show any evidence of fraud, or that the arbitrator was influenced by any other motive than an honest purpose to do justice. His deposition was not taken. The award discloses that he was satisfied that he had not only given to the complainant all that could fairly be awarded, but that he had exercised a liberal judgment in his favor. He may have been mistaken in his estimates. Other engineers might differ from him; Barrett does undoubtedly; perhaps others equally qualified to judge might have placed a lower estimate on the value of the work.

It was to avoid these very contingencies, and to provide for a final decision on all matters of controversy, that the parties stipulated for arbitration. Their chosen umpire has certified his award, and, being without fraud, it is conclusive.

The bill is dismissed.