THE VITAPHONE CORPORATION,

*vs.*

ELECTRICAL RESEARCH PRODUCTS, INC.

*New Castle, April* 21, 1933.

*Hugh M. Morris,* and *George Wharton Pepper* and

*Theodore S. Paul,* both of Philadelphia, Pa., and *Robert W. Perkins,* of New York City, for complainant.

*Christopher L. Ward, Jr.,* and *Arthur G. Logan,* of the firm of Marvel, Morford, Ward and Logan, and *G. F. Hurd* and *J. H. Ray,* both of New York City, for defendant.

PENNEWILL, CHIEF JUSTICE: The question this court is required to decide is one of law, viz., whether the arbitration covenant and/or statute relied on by the respondent constitute a bar to the action instituted in this court by the complainant. There are no questions of fact now involved and it is, therefore, unnecessary to make further reference to the bill of complaint, or state at greater length than I have, the allegations of the plea.

The respondent contends that the arbitration covenant involved in this case, entered into in another State, should be recognized by this court, and be controlling, on the ground of comity, even in the absence of any arbitration statute in the State of its creation.

I will, therefore, first consider the effect of said covenant without regard to the statute.

It may be conceded that there is reason in respondent's contention, but because of two Delaware cases—*Randel v. President, etc., of Chesapeake & Del. Canal,* 1 *Har.* 233, and *Fooks v. Lawson,* 1 *Marv.* 115, 40 *A.* 661, 663, I feel unable to sustain it.

In the *Randel Case* the Court said:

"Courts will not suffer themselves to be ousted of their jurisdiction by the private agreement of the parties. * * * Even in the case of a clear submission of existing disputes either party has a right to revoke the submission. It is true he is answerable on his agreement to submit; but after the revocation this would be no defence in an action to recover the disputed matter. His only liability is on his agreement to abide by the reference; if he violates that agreement it is not a defence to an action for the thing disputed."

The same law was declared in *Fooks v. Lawson, supra*, in which the court used this language:

"The law permits either of the parties to a submission to arbitration to revoke, without the consent of the other, the agreement of such submission, before the award authorized thereby has been made."

Courts outside this State have gone so far as to hold that an agreement to submit to arbitration is in general revocable by either party at any time before an award has been made. 1 *A. & E. Enc. of Law* 664.

In *Section* 55 of *"Restatement of Contracts,"* an excellent work recently published by the American Law Institute, it is said:

"Nor is any bargain to arbitrate a bar to an action on the claim to which the bargain relates."

I am now discussing the effect of an arbitration agreement without regard to any statute on the subject. The language of the court, therefore, in the case of *Meacham v. Jamestown, F. & C. R. Co.*, 211 *N. Y.* 346, 105 *N. E.* 653, 654, *Ann. Cas.* 1915*C*, 851, is in point. The contract provided not only that the decision of the engineer as arbitrator should be final and conclusive between the parties, but further that each party "waives all right of action, suit or suits or other remedy in law or otherwise under this contract or arising out of the same to enforce any claim except as the same shall have been determined by said arbitrator."

The court in that case said:

"Tested by the principles of the cases cited, we conclude that the language employed in the contract in question is suseeptible of but one construction, namely, an attempt on the part of the parties to the same to enter into an independent covenant or agreement to provide for an adjustment of all questions of difference arising between

the parties by arbitration to the exclusion of jurisdiction by the courts. Notwithstanding the decisions of the courts of Pennsylvania that the contract as to arbitration was valid and enforceable in that state, judicial comity does not require us to hold that such provision of a contract which is contrary to a declared policy of our courts * * * shall be enforced as between nonresidents of our jurisdiction in cases where the contract is executed and to be performed without this state, and denied enforcement when made and performed within our state."

In a concurring opinion Judge Cardozo said:

"There may conceivably be exceptional circumstances where resort to the courts of another state is so obviously convenient and reasonable as to justify our own courts in yielding to the agreement of the parties and declining jurisdiction. * * * If any exceptions to the general rule are to be admitted, we ought not to extend them to a contract where the exclusive jurisdiction has been bestowed, not on the regular courts of another sovereignty, but on private arbitrators. * * * It is true that some judges have expressed the belief that parties ought to be free to contract about such matters as they please. In this state the law has long been settled to the contrary. * * * The jurisdiction of our courts is established by law, and is not to be diminished, any more than it is to be increased, by the convention of the parties."

The respondent cites two Delaware cases in support of its position, viz., *Crumlish v. Wil. & Western R. Co.*, 5 *Del. Ch.* 270, and *Stewart v. Grier*, 7 *Houst.* 378, 32 *A.* 328, 329. Upon examination it is found that in both of those cases an award had been made and the court held that the parties to the arbitration were bound by the award, which in the absence of fraud was final. The question was not the right to revoke the agreement, but the right to repudiate the decision. This fact differentiates the last mentioned cases from the one before the court in which no award has been made. It should be borne in mind in considering this question that there is a difference between the power of a party to revoke an agreement to arbitrate, and his power to repudiate an award made in pursuance of the agreement. This difference is recognized

by the authorities. In the case before the court the arbitration still rests in agreement. There has been no award—no decision. No award is set up in the plea.

The failure to distinguish between the effect of an arbitration that rests in agreement, and one in which an award has been made shows that some of the decisions relied on by the respondent are not here in point. In the one case the controversy is undecided, in the other it is in a sense *res adjudicata.*

I do not say that the policy of this State is opposed to the settlement of controversies by arbitration. Such a policy would be unfortunate in these times when settlements without litigation should be encouraged in every way. The tendency of the law is now in that direction perhaps more than ever before. In *Stewart v. Grier, supra,* it was said:

"The tendency of modern jurisprudence is to give force, conclusiveness, and effect to all awards where there is no corruption or misconduct on the part of the arbitrators."

But I do say that courts here and elsewhere are opposed to being ousted of jurisdiction by the agreement of parties to an arbitration, no award having been made. Such was the policy of the State where the arbitration statute in question was entered into, before the arbitration statute was enacted, and if the statute has established a different policy in that State, I do not feel that this court is bound by comity to recognize it.

But is this court compelled, under the full faith and credit clause of the Federal Constitution, or under any other constitutional provision, to give effect to an arbitration covenant of another State when it is supported and made enforceable and irrevocable by a statute of that State? Of course, the respondent does not claim that this court can enforce such a covenant. On the contrary, it expressly disclaims any such thought. But it does claim

that such a covenant and statute is a bar to the prosecution of complainant's case in this court.

This question opens up a wide field of judicial decision in which courts have determined whether such a statute as the one involved in this case grants a substantive right or merely a remedy?

The cases bearing directly or indirectly on this point are numerous, and it would be unprofitable to review many of them in this opinion. But I think it safe to say that the great majority, if not all, the cases hold that such a statute is remedial only. The statute does make an arbitration covenant valid, enforceable and irrevocable, and in that way aids in carrying out the agreement in the State of its creation, but it adds nothing to the contractual rights of either party to the agreement. It is a statutory recognition of the validity of a contract already made, and makes the same enforceable and irrevocable in the State where made. It furnishes protection to the rights of the parties to the contract, or, as some courts have said, provides a further implement for its enforcement. But the agreement itself is not changed in the slightest degree. The statute in question has been held to be remedial by a number of courts including those of the State of its enactment, and I have seen no decision to the contrary. If such be its character it cannot have the extraterritorial effect claimed by the respondent, for all the authorities agree that a remedial statute pertains to the law of the forum. Very few, if any, cases can be found that take a contrary view, where an arbitration covenant and statute were involved.

The very statute upon which the respondent relies has been before the courts in a number of cases, and held to be a remedial act. In the *Meacham v. Jamestown, F. & C. R. Co. Case, supra,* decided before the statute upon which the respondent relies was enacted, Judge Cardozo said:

"An agreement that all differences arising under a contract shall be submitted to arbitration relates to the law of remedies, and the law that governs remedies is the law of the forum. * * * Such a contract, whatever form it may assume, affects in its operation the remedy alone."

If the statute adds nothing to the rights of the parties to the contract and was passed only to aid in the enforcement of rights created by the contract, it must be remedial only. In the *Atlantic Fruit Co. v. Red Cross Line,* (*C. C. A.*) 5 *F.* (*2d*) 218, 219, the court said:

"It is entirely plain that this matter of arbitration, whether based on a New York statute or resting upon traditional and judge-made law, is wholly matter of remedy."

In *Lappe v. Wilcox,* (*D. C.*) 14 *F.* (*2d*) 861, 864, this was the language of the court:

"It is clear that this arbitration statute [N. Y.] relates to the remedy, and not to substantive rights."

In *Berkovitz, et al., v. Arbib & Houlberg,* 230 *N. Y.* 261, 130 *N. E.* 288, 290, Judge Cardozo, speaking for the court, said:

"This statute did not attach a new obligation to sales already made. It vindicated by a new method the obligation then existing."

And in another case, *Marchant v. Mead-Morrison Mfg. Co.,* 252 *N. Y.* 284, 169 *N. E.* 386, 389, the same Judge employed this language:

"The statute of New York does not bring the contract into being, but adds a new implement, the remedy of specific performance, for its more effectual enforcement. This remedy," &c.

In *California Prune & Apricot Growers' Ass'n. v. Catz American Co.,* (*C. C. A.*) 60 *F.* (*2d*) 788, 790, decided in

1932, a California statute was involved which provided that where a written provision for arbitration was made and there is a default in proceedings thereunder, an order shall be made by the court directing the parties to proceed with the arbitration in accordance with its terms.

This case is not in point upon the facts because the question presented was whether the United States District Court for the Northern District of California could grant the same relief under the State statute that the Superior Court of that State could grant, with respect to arbitration. But parts of the court's opinion are much in point. The question to be determined by the court was, after all, one of jurisdiction. The court cited many cases, and in the course of its opinion, said:

" 'Arbitration' is a form of procedure whereby differences may be settled. It is not a definition of the rights and wrongs out of which differences grow.

"The cause of action and the right to prosecute it, whether in the federal or the state courts, grew out of the written contract of purchase and sale, and not out of the agreement for arbitration. The latter was merely a method of procedure adopted by the parties for the settlement of controversies arising thereunder, without litigation.

"The arbitration agreement was a valid contract under the state law, and enforceable under that law in the state court. 'The question is one of remedy, and not of right.' * * *

" 'The distinction between rights and remedies is fundamental. A right is a well founded or acknowledged claim; a remedy is the means employed to enforce a right or redress an injury.' * * *

"The Supreme Court of the United States has held that the purpose of an Arbitration Law of this kind is 'to make specific performance compellable.' * * *

"A change in the form of remedies by the express agreement of the parties is vastly different from a substantive right created by statute. In the instant case, the wrong, if any, to be redressed was the alleged failure of the appellant to pay the appellee. * * * This alleged wrong was one for which the court afforded an ample remedy. All that the act has done is to add another remedy."

The learned solicitors for respondent appreciate, of course, the distinction between statutes that confer substantive rights and those that create a remedy only. But they argue that the statute in question is more than remedial. By making valid, enforceable and irrevocable an arbitration agreement it prevents any suit by either party to the agreement based upon the subject matter of the agreement. It, therefore, grants "immunity from suit" which constitutes a substantive defense against any suit anywhere. This, it is claimed, is a substantive right within the meaning of the law and is binding on this court, under the full faith and credit clause of the Federal Constitution and is a bar to complainant's action here.

Respondent cites, with much confidence, in support of its contention two cases, viz., *Home Insurance Company v. Dick*, 281 *U. S.* 397, 50 *S. Ct.* 338, 339, 74 *L. Ed.* 926, 74 *A. L. R.* 701, and *Bradford Electric Light Co. v. Clapper*, 286 *U. S.* 145, 52 *S. Ct.* 571, 578, 76 *L. Ed.* 1026. In the first of these two cases a statute of Texas was involved, and in the second a statute of Vermont. It will be seen in reading these cases that in neither was an arbitration agreement or arbitration statute involved. In the first mentioned case the contract of insurance provided as follows:

"It is understood and agreed that no judicial suit or demand shall be entered before any tribunal for the collection of any claim under this policy, unless such suits or demands are filed within one year counted as from the date on which such damage occurs."

It was a Mexican contract and suit was brought thereon in Texas more than one year after demand, which was permissible under the law of that State.

It was held that the time limit in the policy sued on, however characterized, was an express term in the contract of the parties by which the right of the insured and

the correlative obligation of the insurer are defined. The court further said:

"As construed, it [the Texas statute] also directs the disregard in Texas of contractual rights and obligations wherever created and assumed; and it commands the enforcement of obligations in excess of those contracted for."

In the *Clapper Case* a Vermont contract was involved which, under the law of that State, confined an employee, in case of injury, to his remedy under the Workmen's Compensation Law of that State. In New Hampshire, where the injury happened, and suit was brought, the employee had a right to sue at common law. It was contended that in view of the Vermont law the employee had no right to sue at common law and this defense was sustained, under the full faith and credit clause.

The opinion of the Supreme Court in both of these cases was written by Justice Brandeis, but I think they can have no bearing on the instant case. Justice Brandeis had formerly, in *Red Cross Line v. Atlantic Fruit Co.*, 264 *U. S.* 109, 124, 44 *S. Ct.* 274, 277, 68 *L. Ed.* 582, said, when referring to the New York statute in question:

"This state statute is wholly unlike those which have recently been held invalid by this court. The Arbitration Law deals merely with the remedy in the state courts in respect of obligations voluntarily and lawfully incurred."

It may be noted that Justice Stone, in the course of a concurring opinion in the *Clapper Case*, said:

"I can find nothing in the history of the full faith and credit clause, or the decisions under it, which lends support to the view that it compels any state to subordinate its domestic policy, with respect to persons and their acts within its borders, to the law of any other."

I have examined the *Dick* and *Clapper Cases* with a great deal of care to see if they had any bearing, directly or by analogy, on the case before this court, but have been unable to discover any bearing. It seems to me that a statement of the facts makes clear their inapplicability to the present case. There is no Delaware statute involved in this case which disregards the very essence of a contract made in another State.

The two cases, reviewed and distinguished, are the ones upon which the respondent seems to rely, almost entirely, and I think it unnecessary to refer to any· others cited on the same point.

It may be said in respect to "immunity from suit," which respondent stresses as a right given by the New York statute, it could be no greater than a similar right given by an arbitration covenant. When the Delaware courts, whose decisions I feel should be binding on me in the present case, held that notwithstanding an arbitration agreement suit could be brought at any time before award, it was impliedly decided that there was no immunity from suit given by the arbitration contract, and the result seems to be the same if the contract of covenant to arbitrate waives any other remedy because, in the *Meacham v. Jamestown, F. & C. R. Co. Case, supra,* there was this provision in the arbitration agreement:

"And each and every of said parties hereby waives all right of action, suit or suits or other remedy in law or otherwise, under this contract, or arising out of the same to enforce any claim except as the same shall have been determined by said arbitrator."

Notwithstanding such waiver, the New York court sustained the right to enter suit, although under the law of Pennsylvania, where the contract was to be performed, the contract as to arbitration was valid and enforceable.

In the case of *Tenn. Coal, Iron & R. Co. v. George,* 233

U. S. 354, 34 *S. Ct.* 587, 588, 58 *L. Ed.* 997, *L. R. A.* 1916D, 685, the court said:

"The record raises the single question as to whether the full faith and credit clause of the Constitution prohibited the courts of Georgia and enforcing a cause of action given by the Alabama Code, to the servant against the master, * * * when another section of the same Code provided that suits to enforce such liability 'must be brought in a court of competent jurisdiction within the state of Alabama, and not elsewhere.' "

*Section* 9 of *Article* 1 of the *Constitution of Delaware* provides that:

"All courts shall be open; and every man for an injury done him in his reputation, person, movable or immovable possessions, shall have remedy by the due course of law."

I am clearly of the opinion, from the authorities, that an arbitration covenant, and arbitration statute, like the ones here involved, do not grant immunity from suit in this jurisdiction. Such a covenant and statute relate to the law of remedies solely, and it is undisputed that the law that governs remedies is the law of the forum. Therefore, I conclude that the arbitration covenant and statute relied on by the respondent constitute no bar to the action brought by the complainant in this court.

I come now to the last defense urged by the respondent, viz., "estoppel and unclean hands." It may be that respondent places but little reliance on this defense, but the conduct of the complainant respecting the arbitration agreement has given me some concern. The complainant says this defense cannot be raised under the plea which must be limited to a single point. There is authority for such claim. It was stated by Chancellor Kent in *Goodrich v. Pendleton,* 3 *Johns. Ch.* (*N. Y.*) 384, 388, that "every plea must rest the defense upon a single point, and upon that point create a bar to the suit."

But it seems to me that such a defense ought to be available in any case. if notice is given by the plea. But without distinctly passing upon that question I want to say it is clear from the record that the complainant was largely responsible for the arbitration covenant, and up to a certain time very desirous of carrying out the agreement that both parties had solemnly entered into. But it is obvious that the complainant later regretted its act and endeavored to end the arbitration. And it may have accomplished its purpose because it is not certain that the arbitration would function again even if the plea should be sustained, and the restraining order issued here vacated.

However, with full knowledge of all that had been done under the arbitration, including the enormous expense incurred, estimated by counsel at seven hundred and fifty thousand dollars, the complainant requested the arbitrators to withdraw from the proceedings because of the great delay and expense, and also because the arbitration had proved abortive and nugatory. After continuing the arbitration for four years, taking a large amount of testimony, and creating a tremendous expense, it does seem to me that the complainant should have felt bound to follow through. But it may have felt warranted in the course it pursued. In the first plea there were some claims submitted to the arbitration that had not been acted upon at all, and even though they may have been comparatively unimportant, there was no telling how much more time and expense would have been required to reach an award thereon. And besides, the complainant claims there were matters in dispute that were not referred to the arbitrators, and that an award would not, therefore, end the controversy.

I exceedingly regret the great expense already caused by the arbitration, and am impressed with the statement of the respondent that a trial *de novo* in this jurisdiction would not only make futile the time, labor and money

heretofore spent, but greatly add thereto by extended litigation here. But I think respondent's fear in this regard may be exaggerated. As I have said, it is not known how much more time and money would be required to complete the arbitration so long continued in another State. If the litigation should be continued in this court to the end, it might not be so long, inconvenient and burdensome as respondent anticipates.

One thought that seems particularly disturbing to respondent is, that all the books and records required in evidence would have to be brought here at heavy expense, and at very great inconvenience to respondent's business. If proceedings should continue in this court it is quite certain that a master would be appointed to take the testimony, and the hearings could be had here or elsewhere as might seem advisable and for the best interest of all concerned.

While the conduct of complainant respecting the arbitration was not blameless, and cannot be excused, I am not convinced that it was of such character as to estop the complainant from prosecuting its case in this court.

For the reasons stated, respondent's plea is overruled.