# JOHN DONNELLY *vs.* THE SUPREME COUNCIL, CATHOLIC BENEVOLENT LEGION.

*Benefit Societies—Jurisdiction of Tribunals of Order—Reasonable By-Law as to Permanent Disability Benefit.*

When a benefit society has established tribunals of its own, with full power to determine the validity of claims for benefits and to allow or reject them, with a right of appeal from the ruling of the tribunal of first instance, the persons who become members of the society thereby agree that questions between them and the society as to their property rights shall be settled by such tribunals.    Courts of law will not inquire into the regularity .of the procedure adopted by the tribunals of the order in passing upon claims, but their jurisdiction is exclusive, whether or not there exists a by-law declaring that their decision shall be final, and their determination will not be reviewed by the Court except in case of fraud.

At the time when plaintiff received a certificate of membership in a benefit society, by which the constitution and by-laws of the society were made part of the contract, a by-law provided that benefits for permanent disability should not be paid except to a member who shall have become permanently disabled from attending to his business or gaining a livelihood, and is destitute of the means of support when he shall have arrived at the age of expectancy.    *Held*, that this by-law is reasonable and is binding upon the plaintiff.

*Decided June 25th, 1907.*

Appeal from the Superior Court of Baltimore City (NILES, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Chas. W. Heuisler* and *E. Allan Sauerwein*, for the appellant.

*Richard B. Tippett* and *William S. Bansemer*, for the appellee.

BURKE, J., delivered the opinion of the Court.

John Donnelly, the appellant, sued the Supreme Council Cotholic Benevolent Legion, a corporation organized under the laws of the State of New York. The defendant is a fraternal and beneficial organization, its particular business and object being "to unite fraternally all male Roman Catholics personally acceptable, of sound bodily health, for social, benevolent, and intellectual improvement, and to afford moral and material aid to its members and dependents by establishing a fund for the relief of sick and distressed members, and a benefit fund from which on satisfactory evidence of the death of a member, who has complied with all its lawful requirements, a fixed sum is to be paid to the family or dependents of such member as he shall have directed; and from which benefit fund another fixed sum is to be paid to a member who shall have complied with all lawful requirements, and who shall have become permanently disabled from attending to business, or gaining a livelihood."

In 1882 the plaintiff made application for membership in the defendant corporation, in which application he promised and agreed to make punctual payment of all dues and assessments for which he might become liable, and to conform in all respects to the laws, rules, and usages then in force, or which might thereafter be adopted by the Supreme Council Catholic Benevolent Legion. On the 12th day of December, 1882, the defendant issued to him a benefit certificate, wherein it promised to pay to him out of its funds the sum of twenty-

five hundred dollars, upon due proof that he had become entitled thereto under the provisions of law relative to permanent disability.   At the time of the plaintiff's application for membership and at the time of issuing the benefit certificate, the provisions of the defendant's constitution and by-laws relating to the payment of disability benefits were as follows: Section 3, Article 2 of the Constitution provided that it should establish a benefit fund from which, on satisfactory evidence of the death of a member, who had complied with all the lawful requirements of the order, a sum not exceeding five thousand dollars should be paid to the family or dependents, as such member may have directed, and from which said fund a sum not exceeding twenty-five hundred dollars should be paid to a member who had become permanently disabled from attending to business, or gaining a livelihood, and who should then have complied with all the lawful requirements of said body corporate.   No application for a disability benefit could be made until the member had arrived at the age of expectancy fixed by the printed table of the laws of the order.   By sec. 2, ch. 1 of the laws of the defendant it was provided as follows:   "Five thousand dollars shall be the largest amount paid by this legion on the death of a member.   Twenty-five hundred dollars shall be the largest amount paid for a permanent disability benefit.   Five thousand dollars shall be paid on the death of every sixth grade member; three thousand dollars on the death of every fourth grade member; two thousand dollars on the death of every third grade member; one thousand dollars on the death of every second grade member; and five hundred dollars on the death of every first grade member.   And one-half of the amount of each grade may be paid to a member of that grade who shall have become permanently disabled from attending to his business, or gaining a livelihood, *and is destitute of the means of support when he shall have arrived at the age of expectancy.*"

The plaintiff contends that the portion of the above by-law which makes the payment of the permanent disability benefit dependent upon his being destitute of the means of support

at the time of his arrival at the age of expectancy, is invalid and not binding upon him.   It was stipulated in the certificate issued to the plaintiff, and upon which this suit is based, that the constitntion and laws of the defendant society in force at the time of issuing said certificate, and the laws thereafter enacted by the defendant society, together with the application for membership made by the defendant, should constitute the contract between the plaintiff and the defendant.   The plaintiff was a sixth grade member, and claims to be entitled to receive the sum of twenty-five hundred dollars as a disability benefit under the terms of his certificate.

The defendant had established tribunals within its own body to which claims such as the plaintiff's were to be referred, and these tribunals were clothed with full power to determine their validity and to allow, or reject them—an appeal being allowed from these different tribunals to the Supreme Council.   Under the provisions of the by-laws of the Society relating to a claim such as that sued for in this case, the plaintiff made three different applications for the payment of the amount for which this suit is brought.   His claim was denied by the order, and, notwithstanding this, he contends that a Court of law has jurisdiction to hear and determine the validity of his claim against the defendant, and in support of his contention it is urged first, that the tribunals established by the order could not legally pass upon his claim; secondly, conceding that these tribunals might lawfully pass upon the claim, the plaintiff still has a right, after the order has rejected it, to bring his suit at law, because there is no provision in the laws of the order that the finding of this established tribunal shall be final; third, because the by-law of the order which requires that no disability benefit shall be paid, unless the member shall be destitute of the means of support when he shall have arrived at the age of expectancy, is not binding upon him and is null and void, being, it is argued, inconsistent with the constitution of the order, and was not passed in pursuance of authority derived from it; and fourth, because the finding of the tribunal was defective.

As to the first and fourth reasons assigned in support of the right to maintain the suit, it is sufficient to say that this Court has expressly decided that it is competent for the members of an order such as the defendant to agree that questions between the members and the order relating to property rights may be referred to and settled by tribunals established within the order, and that the Courts will not undertake to inquire into the regularity of the procedure adopted and pursued by those tribunals in reaching their conclusions.    Each of these propositions was distinctly established in the case of *The Osceola Tribe, No. 11, O. R. M.* v. *Schmidt, Adms.*, 57 Md. 105, in which this Court, adopted the rule laid down by the Supreme Court of Pennsylvania in *Vandyke's case*, 3 Wharton, 312, in which a beneficial society had decided under its by-laws that a member was not entitled to benefits.    JUDGE GRASON, who delivered the opinion in Schmidt's case, quotes with approval the following language of CHIEF JUSTICE GIBSON: "Into the regularity of these proceedings, it is not permitted us to look. The sentence of the society, acting in a judicial capacity, and with undoubted jurisdiction of the subject-matter, is not to be questioned collaterally, while it remains unreversed by superior authority." "These are private beneficial institutions operating on the members only, who, for reasons of policy and convenience affecting their welfare, and perhaps their existence, adopt laws for their government, to be administered by themselves, to which every person who joins them assents.    They require the surrender of no right that a man may not waive, and are obligatory on him, only so long as he chooses to recognize their authority.    In the present instance, the party appears to have been subjected to the general laws and by-laws according to the usual course, and if the tribunal of his own choice has decided against him, he ought not to complain.    It would very much impair the usefulness of such institutions if they are to be harrassed by petty suits of this kind, and this probably was a controlling consideration in determining the manner of assessing benefits, and passing upon the conduct of members." *Anacosta Tribe of Redmen* v. *Murbach*, 13 Md. 94–95.

The proposition that the member is not precluded from suing at law, after he has exhausted his remedies within the order, unless the contract specifically provides that the decisions of the tribunals of the order shall be final, is supported by the decisions of some States, among which are the States of Illinois and Indiana.    But the Maryland rule is otherwise. That rule was expressed, with clearness and precision by the learned Judge who decided this case below to be, that when the tribunals of the order have power to decide a disputed question "their jurisdiction is exclusive, whether there is a by-law stating such decision to be final, or not, and that the Courts cannot be invoked to review their decisions of questions coming properly before them, except in cases of fraud. This is true, whether the member does not press his claim at all before the tribunals of the order, or whether he carries it through the final tribunal, or whether he goes through only a part of the hearings which he might have in the order.    According to the law of this State it is the existence of a tribunal, properly erected and charged with the duty of determing the rights of the members as between themselves and the order, which is a bar to a suit in Court of a member against such order in regard to any question so confided to the tribunals of the members own choice.

The rule contended for by the appellant might subject the order to litigation over every question of property right affecting the member, would render the tribunals of the order practically useless, and would defeat the object for which they were established. In the *Osceola Tribe* v. *Schmidt, Adms.*, *supra*, there was no law providing that the decision of the tribe should be final, and this omission was urged as a reason why the suit could be maintained, but this Court applied the *rule declared in the Anacosta Tribe of Redmen* v. *Murbach*, 13 Md. 94, to the case, and held that the adverse decisions of the tribunals of the order constituted a flat bar to the plaintiff's right to recover. The by-law which the plaintiff assails as void was adopted and was in force at the time he became a member of the Legion. It is, in our opinion, a wise and

reasonable ⌐gulation, designed to conserve the funds of the order for the benefit of that class of persons to aid and care for whom was one of the chief reasons for its existence. A member "permanently disabled from attending to business, or gaining a livelihood" might be a man in comfortable circumstances, or a millionaire, and to admit such a person to share in the disability benefit fund would be not only unreasonable, but would in many instances divert the funds of the order to objects never contemplated by its founders—from the needy and distressed to the well-to-do and wealthy. The charter, constitution and by laws of the defendant provide a wise and harmonious system by which the benevolent purposes of the order may be accomplished.

Since the argument of this case the attention of the Court has been called to the case of *Ayers* v. *The Grand Lodge of the Ancient Order of United Workmen*, decided by the Court of Appeals of New York, April 16th, 1907, and reported in 80 *North Eastern Reporter*, 1020 N. Y. That case, so far as the main questions involved in this appeal are concerned, is clearly distinguishable from the case at bar. In that case the contract between Emory D. Fuller, the insured, who became a member of the order in 1885, and the defendant contained no restrictions as to his business or occupation. More than twenty years after the benefit certificate had been issued to him, the order, without his consent, adopted a by-law, suspending from membership those engaging in the business of selling intoxicating liquors as a beverage. Previous to January 1st, 1904, Fuller had never engaged in the business of selling liquor, but on that day, in connection with one Hanchett, his co-partner, he began to carry on a hotel at Weedsport, New York, and the firm employed a bar tender, who sold intoxicating liquors for them in the usual way over the bar. Fuller died in 1904, and proofs of death were made out in due form, but the defendant refused to pay the amount stipulated to be paid by the certificate, or any part thereof, upon the ground that the insured ceased to be a member of the order by engaging in the business of selling intoxicating liquors at

retail after the passage of the by-law mentioned.   The lower Court found that when Fuller joined the order he had a right to engage in the liquor traffic, and that said order, by a rule subsequently made, could not cut off that right which had become vested; that the defendant had the right to make reasonable by-laws, but by the by-law in question, made *without notice to the insured*, was unreasonable, and therefore void as to him, and being a member in good standing at his death the plaintiff was entitled to recover the amount claimed. .The Court of Appeals of New York, in considering this state of facts, said: "The defendant promised by the contract which it made with the assured to pay the beneficiary designated by him upon his death the sum of $2,000.00.   The obligation of that contract was not limited by the occupation of the assured; for in the absence of any restriction made by the parties, he had an absolute right to engage in any lawful business he might select.   After this contract had been in force for more than twelve years, and he had paid all of his assessments as they became due and had complied with all the rules and regulations of the defendant, an attempt was made to restrict him in the choice of an avocation by amending the by-laws to that effect without his consent.   When he had been insured for over nineteen years and had reached an age when other insurance could not be procured without a decided increase in cost, and perhaps not at all, he engaged in a new business requiring less strength and activity, and died within a few months thereafter.   He continued to pay his dues after making the change, and, as the trial Court expressly found, the duly authorized officer of the defendant knew when he received such dues that the insured "was engaged in the hotel business." The amended by-law, if enforced, according to its terms, would deprive him of a right which he acquired by contract nearly twenty years before, and which he had preserved by paying to the defendant substantial sums of money every year during that period.   The reservation of a general power to amend the by-laws, without reserving the specific right to so amend them as to restrict the occupation, did not permit an

amendment in that respect, and the attempt made, *without the consent of the assured*, was beyond the power of the defendant and absolutely void as to him."

The by-law to which the plaintiff in this case objects had been enacted before he became a member of the order. He knew of its existence at the time he became a member and made it a part of his contract with the defendant and acquiesced in it for many years, and he will not now be permitted to repudiate it. The facts stated in the defendant's plea, to which the plaintiff demurred, brings this case fully within the principles announced in *Schmidt case, supra*, and *Weigand's case*, 97 Md. 443, and constitute a complete bar to the suit. The judgment will, therefore, be affirmed.

> *Judgment affirmed, with costs to the appellee above and below.*