Argued at Pendleton October 28; reversed December 20, 1946

# RUEDA *v.* UNION PACIFIC RAILROAD CO.

### (175 P. (2d) 778)

*Hugh E. Brady,* of LaGrande, for respondent.

*Joseph G. Berkshire,* of Portland (with Roy F. Shields, of Portland, and Cochran & Eberhard, of LaGrande, on the brief), for appellant.

Before BELT, Chief Justice, and BAILEY, LUSK, BRAND and HAY, Justices.

BRAND, J.

The case presents an important and, in this state, a novel question. There is no conflict of testimony on any material issue. Our decision must rest solely upon the pleadings, the admissions and stipulations of the parties, and the undisputed evidence. We will recite the facts in narrative form.

The defendant has established and maintains a hospital department for its Northwestern District, which includes Oregon, for the care of sick and injured employees. The defendant railroad company by resolution accepted from a predecessor in interest the transfer of the hospital fund "to be held as a hospital fund, under such rules and regulations as this company may, from time to time, establish," and "assumed certain obligations" including the "obligation as trustee of said hospital fund." Plaintiff entered the employ of the defendant in February 1944, pursuant to a written application signed by him and accepted by the defendant. It reads in part as follows:

"In consideration of my employment by said Company and as a part of consideration moving it to employ me, I do hereby agree to contribute to the said Company each month or fractional part thereof during said employment, such sums as may be prescribed, to be deducted from my salary or wages and to be applied by the said Company to the maintenance of the Hospital Department, the benefits of which I shall by virtue of such contributions be entitled to enjoy, in accordance with the rules and regulations governing the said Department, as adopted by the said Company, and such amendments thereto as may hereafter be adopted."

The Hospital Department is operated by the defendant without gain or profit to it. In addition to the contributions of the employees, the company contributes about $2500 a month to the trust fund. All contributions made by plaintiff to the Hospital Department by wage deductions were turned over to said department for administration pursuant to the rules and regulations.

Section 3, Article V of said rules and regulations provides:

"No benefits will be given for venereal diseases, nor for ailments due to intemperance, vicious habits, injuries received *in a fight or brawl,* or occasioned by any unlawful act, or for chronic diseases acquired before entering the employ of the Company."

Article IV of the rules provides:

"The Chief Surgeon shall be the executive officer immediately in charge of the Department and all correspondence pertaining thereto should be addressed to him direct. All questions concerning Administration of the Department will be decided by him and there will be no appeal from his decision, save to the General Manager, whose decision shall be final."

After his injury the plaintiff requested an order for his treatment by the Hospital Department, which request was referred to the Chief Surgeon who investigated the facts surrounding the plaintiff's injuries and concluded that the injuries were received in a "fight or brawl" and that plaintiff was ineligible for benefits pursuant to the provisions of Article IV. Plaintiff, claiming that he was assaulted through no fault of his own, then appealed to the General Manager. The Manager conducted an investigation of the facts and, after considering the matter, affirmed the decision of the Chief Surgeon and denied plaintiff's request. The plaintiff then brought this action.

In construing Article IV of the rules, it is significant that "all questions" concerning administration of the department are first submitted to the Chief Surgeon, thus indicating that the questions in contemplation relate to medical matters or claims for benefits

from the fund. Again, the provision for appeal to the General Manager normally would suggest a proceeding on a claim against the department rather than a question of internal management or policy of the department. Questions as to financial policy concerning investments of the trust fund or the like would scarcely have been referred to the Chief Surgeon.

If there should be a question as to the construction of Article IV, there is no question as to the practical construction placed upon it by both parties. By appealing to the General Manager from the adverse decision of the Chief Surgeon, the plaintiff himself has construed the rule as requiring that claimants for sick benefits must exhaust the appellate procedure prescribed therein. The General Manager of the defendant by entertaining the appeal also clearly construed the rule as providing for appeal to him in such cases. The trial court construed the rule to which plaintiff had agreed as requiring appeal to the General Manager in such cases; and, by necessary implication, the court construed the by-law as meaning that the decision of the General Manager should be final and conclusive, for he instructed the jury that the rule violates Article I, Section 10, of the Oregon Constitution. The court could not have so held unless he construed the rule as meaning that the decision of the General Manager was intended to be conclusive.

On this appeal the parties have joined issue upon a single question, namely, the validity of the contractual by-law on the assumption that the appellate procedure prescribed therein applies to this case and that when such procedure is followed the decision of the General Manager is conclusive unless the contractual by-law is void as against public policy or unconstitutional. We

adopt the construction of the parties and of the trial court and will determine the issue as presented in both briefs.

Defendant assigns seven alleged errors but they all present the same ultimate question, namely, the conclusiveness of .the arbitral decision of the General Manager. The plaintiff states his position as follows: "Parties cannot stipulate beforehand to submit their rights generally to the judgment of a designated third party for final determination. The effect of such a stipulation is to oust the courts of their jurisdiction, and restrict the parties from enforcing their rights under the contract by the usual legal proceedings in the ordinary tribunals. This paragraph of the contract is therefore void * * * ."

As said by Williston: "The word 'arbitration' is normally applied to all extrajudicial determinations of controversies by judges chosen by parties to the dispute * * * ." 6 Williston, Contracts (rev. ed. 1938) § 1918. We must seek guiding principles within the law of arbitration and award as thus broadly defined.

For the sake of brevity, we shall employ the term "general (unlimited) arbitration agreement" to describe agreements for the arbitration of any and all disputes which may in the future arise out of a contract. When the arbitration procedure has been carried out pursuant to the contract and an award has been made, we shall employ the term "executed general arbitration agreement." When the agreed arbitration procedure has not been executed, we shall refer to the contract as an "executory general arbitration agreement." We shall apply the term "limited arbitration agreement" to disputes arising in the future but in which the issues for determination are narrowly de-

fined, such as value, amount of damage, compliance with specifications and the like, and shall describe such agreements as executory or executed as the case may be. Following Williston's terminology, we shall refer to agreements to submit existing disputes as "submission agreements," describing them as general or limited, executory or executed, as the case may be. As indicated by Williston, it is often difficult to determine whether the arbitration or submission agreement is general or is a limited or appraisal agreement, "but the final test should be whether or not the parties intended the 'arbitrators' to determine ultimate liability or merely facts incidental thereto." 6 Williston, Contracts (1938) § 1921A, p. 5376.

There are many cases in which the language used tends to support plaintiff's general proposition "that a party cannot bind himself by contract in advance to renounce his right to appeal to the courts." It has been stated to be the general rule at common law that agreements for arbitration of future disputes and for the submission of existing disputes are revocable, and most of the courts which follow that rule base their decision on the ground that such agreements *oust the courts of their jurisdiction* and are therefore against public policy. *Eminent Household of Columbian Woodmen v. Payne,* 18 Ala. App. 23, 88 So. 454; *Wortman v. Montana Central Railway Co.,* 22 Mont. 266, 56 P. 316; *Myers v. Jenkins,* 63 Ohio St. 101, 57 N. E. 1089, 81 Am. St. Rep. 613; Sturges, Commercial Arbitrations and Awards, § 15, p. 45, § 76, p. 237; 6 Williston, Contracts (1938) § 1919, p. 5360.

Although the cases are in hopeless conflict, it seems clear that the rule of revocability is not necessarily a rule of invalidity based on public policy. In the Re-

statement of Contracts it is said that a bargain to arbitrate "either an existing or a possible future dispute is not illegal, unless the agreed terms of arbitration are unfair," but such agreements will not be specifically enforced in equity nor may they be employed to stay court action on the contract nor as a bar to such action. At least nominal damages are, however, allowed for breach of the agreement. Restatement, Contracts § 550 and Comment (a). The law would hardly allow recovery of nominal damages for breach of a contract void on grounds of public policy.

■ Limited arbitration or submission agreements when stated as conditions precedent to liability are not illegal and, when a plaintiff has brought suit without first pursuing the agreed procedure, they may be set up as a stay or a bar to the action. Restatement, Contracts § 551 (2).

> "The distinction has been generally made between an agreement which provides merely for the ascertainment of certain facts by arbitrators, and one which provides for the determination of ultimate legal liability by them. The former, generally only if expressly made a condition precedent to an action, sometimes regardless of this, is enforceable; the latter irrespective of its form encounters the common-law hostility previously alluded to and is held illegal although it does not invalidate the remainder of the bargain." 6 Williston, Contracts (1938) § 1921A, p. 5373.

In *Anderson v. Hartford Accident & Indemnity Co.,* 152 Or. 505, 53 P. (2d) 710, 54 P. (2d) 1212, the plaintiff entered into a limited arbitration agreement as a part of a group insurance contract. It was provided that, in the event of dispute as to the date when

compensation payment should terminate, the question should be submitted to medical arbitrators whose decision shall be "final." Payments were made for a time and then discontinued, and the plaintiff brought suit without first pursuing the agreed procedure. The arbitration agreement was phrased as a collateral clause but was held to be a condition precedent to maintenance of the action. Judgment for the defendant was affirmed. The same ruling was made in *McCullough v. Clinch-Mitchell Const. Co.,* 71 F. (2d) 17, and in *Holmes v. Richet,* 5 Cal. 307, 38 Am. Rep. 54.

Speaking of the effect of executory arbitration agreements, Williston says:

> "The technical distinction between appraisal and arbitration, between clauses properly enforceable as a condition precedent and those too broad in their nature or too improperly drawn to be enforced thus, though once, as previously explained, having a purpose in affording some relief against the rigor of the old rule, have outlived their usefulness and should be eliminated from the law * * *." 6 Williston, Contracts (1938) § 1922, p. 5379.

■ We think *Anderson v. Hartford Accident & Indemnity Co.,* supra, was properly decided. There is, of course, a technical distinction between a collateral covenant for arbitration and one which is expressly stated to be a condition precedent to liability, but we see no reason based on public policy which would justify holding a limited arbitration void when worded as a collateral covenant but valid when worded as a condition precedent.

When we consider the effect of executory general arbitration agreements, i. e., of agreements that arbitrators may determine future disputes, including

even the issue of liability, as distinguished from limited agreements, the ancient common-law hostility to agreements "ousting the courts of jurisdiction" becomes manifest, and it is often held that one may bring an action in court without complying with the agreed arbitral procedure. The Restatement of Contracts, § 551 (1) is as follows:

"A provision in a bargain that arbitration of the whole question of whether there has been a breach of contract shall be a condition of any right of action is illegal, but does not invalidate the remainder of the bargain." Restatement, Contracts, supra.

*United States Asphalt Refining Co. v. Trinidad Lake Petroleum Co.*, 222 F. 1006; *Eminent Household of Columbian Woodmen v. Payne*, supra; *Vitaphone Corporation v. Electrical Research, Inc.*, 19 Del. Ch. 247, 166 A. 255; *Benza v. New Era Association*, 323 Ill. 297, 154 N. E. 129; *Walsche v. Sherlock*, 110 N. J. Eq. 223, 159 A. 661; *Pepin v. Societe St. Jean Baptiste*, 23 R. I. 81, 49 A. 387, 91 Am. St. Rep. 620.

The matter of prime importance in the case at bar is not whether executory general arbitration agreements are valid when employed as a stay or bar to action or whether they are revocable before an award is made. The question here is whether they unlawfully oust the courts of jurisdiction and are so against public policy as to invalidate an award made when the parties have actually carried out the agreed arbitral procedure. In the case at bar the arbitration procedure was pursued and exhausted before the plaintiff brought suit. We shall later point out the vital distinction between executory arbitration agreements and those that have been executed, but it is our purpose at present

to examine the rules of public policy which have been applied in cases which have involved executory general arbitration agreements and which have, we believe, been erroneously carried over into cases in which the agreement has been executed.

This question received authoritative consideration in the leading case of *Red Cross Line v. Atlantic Fruit Company*, 264 U. S. 109, 68 L. Ed. 582, 44 S. Ct. 274, in an opinion by Justice Brandeis. That was a case under the New York arbitration statute. A charter party contained a general arbitration agreement and provided that the award shall be "final." Pursuant to the terms of the statute, the plaintiff had applied to the New York Court for an order directing the defendant to join in the arbitration. The United States Supreme Court held that the New York statute was a rule of procedure and was constitutional and that the New York Court could specifically enforce the arbitration agreement. Speaking of the common-law rule the court said:

"The Federal courts—like those of the states and of England—have, both in equity and at law, denied, in large measure, the aid of their processes to those seeking to enforce executory agreements to arbitrate disputes. They have declined to compel specific performance (Tobey v. Bristol County, 3 Story, 800, 819-826 Fed. Cas. No. 14,065); or to stay proceedings on the original cause of action (Story, Eq. Jur. § 670). They have not given effect to the executory agreement as a plea in bar, except in those cases where the agreement, leaving the general question of liability to judicial decision, confines the arbitration to determining the amount payable, or to furnishing essential evidence of specific facts, and makes it a condition precedent to the cause of action. Hamilton v. Liverpool & L. &

G. Ins. Co., 136 U. S. 242, 255, 34 L. ed. 419, 423, 10 Sup. Ct. Rep. 945; Martinsburg & P. R. Co. v. March, 114 U. S. 549, 29 L. ed. 255, 5 Sup. Ct. Rep. 1035. *But an agreement for arbitration is valid, even if it provides for the determination of liability.* If executory, a breach will support an action for damages. Hamilton v. Home Ins. Co., 137 U. S. 370, 385, 386, 34 L. ed. 708, 713, 11 Sup. Ct. Rep. 133. *If executed,—that is, if the award has been made,—effect will be given to the award in any appropriate proceeding at law or in equity.* Karthaus v. Yallas Y. Ferrer, 1 Pet. 222, 7 L. ed. 121; Burchell v. Marsh, 17 How. 344, 15 L. ed. 96; Bayne v. Morris, 1 Wall. 97, 17 L. ed. 495. And, although there is no Federal legislation on the subject, an executory agreement, however comprehensive, will, if made a rule of court, be enforced in courts of the United States by any appropriate process. Hecker v. Fowler, 2 Wall. 123, 17 L. ed. 759.'' *Red Cross Line v. Atlantic Fruit Co.*, supra. (Italics ours.)

The court concluded by saying:

'' * * * we have no occasion to consider whether the unwillingness of the Federal courts to give full effect to executory agreements for arbitration can be justified.'' *Red Cross Line v. Atlantic Fruit Co.*, supra.

Reference was then made to *The Atlanten* (Rederiaktiebolaget Atlanten v. Aktieselskabet Korn-Og Foderstof Kompaigniet), 252 U. S. 313, 315, 64 L. Ed. 586, 589, 40 S. Ct. Rep. 332; *Atlantic Fruit Co. v. Red Cross Line,* 276 Fed. 319; *Aktieselskabet Korn-Og Foderstof Kompagniet v. Rederiaktiebolaget Atlanten,* 250 Fed. 935; *United States Asphalt Refining Co. v. Trinidad Lake Petroleum Co.,* supra. In each of the cited cases the rule of judicial hostility to such agreements is severely criticized.

The same matter was also treated as an open question in *Rederiaktiebolaget Atlanten v. Aktieselskabet Korn-Og Foderstof Kompagniet,* supra, where the court by Justice Holmes said:

"With regard to the arbitration clause we shall not consider the general question whether a greater effect should not be given to such clauses than formerly was done, since it is not necessary to do so in order to decide the case before us." *Rederiaktiebolaget Atlanten v. Aktieselskabet, etc.,* supra.

In *United States Asphalt Refining Co. v. Trinidad Lake Petroleum Co.,* supra, the plaintiff brought an action in personam for damages for breach of a charter party. The defendant interposed a motion to stay the prosecution of the suit and set up a general arbitration contract (covering all future controversies) in support of the motion. The court, by Judge Hough, considered itself bound by the rule "that such a complete ouster of jurisdiction," such as was shown by the contract, "is void in the federal forum." The motion to stay the action was denied. But concerning the federal rule, the court said:

"Inferior courts may fail to find convincing reasons for it; but the rule must be obeyed. * * *
"It has never been denied that the hostility of English-speaking courts to arbitration contracts probably originated (as Lord Campbell said in Scott v. Avery, 4 H. L. Cas. 811)—'in the contests of the courts of ancient times for extension of jurisdiction—all of them being opposed to anything that would altogether deprive every one of them of jurisdiction.'
"A more unworthy genesis cannot be imagined. Since (at the latest) the time of Lord Kenyon, it has been customary to stand rather upon the an-

tiquity of the rule than upon its excellence or reason. * * *

"No reason for the simple statement that arbitration agreements are against public policy has ever been advanced, except that it must be against such policy to oust the courts of jurisdiction. * * *

"Yet it is surely a singular view of juridical sanctity which reasons that, because the Legislature has made a court, therefore everybody must go to the court." *United States Asphalt Refining Co. v. Trinidad Lake Petroleum Co.,* supra.

The opinion contains a thorough, logical and historical analysis of the whole doctrine of ouster and refuses it on principle but follows it upon supposed federal authority.

Concerning this case Williston writes:

"One who examines the cases will probably reach the conclusion that the criticism of the law concerning agreements to arbitrate made by Judge Hough is in many instances well founded. The law should provide a method of enforcing this business method of escape from the inexpert jury system with the concomitant expense, delay, and technicality of trial, and should lend legal sanction of some nature to what business men consider an obligation." 6 Williston, Contracts (1938) § 1922, p. 5377.

It will be observed that Judge Hough, in holding that an executory general arbitration agreement may not be employed to stay an action, applied the federal rule which he criticizes but that he was in error in stating that such agreements are "void" under the federal decisions. As we have seen from the later Supreme Court case, *Red Cross Line v. Atlantic Fruit Co.,* supra, "an agreement for arbitration is valid even if it provides for determination of liability." Had

Judge Hough said "revocable" instead of "void," he would have more accurately stated the federal rule.

In *Pacaud v. Waite,* 218 Ill. 138, 75 N. E. 779, 2 L. R. A. (N. S.) 672, the parties as members of the Chicago Board of Trade entered into a general arbitration agreement for the determination of any future dispute as to the person to whom any "margin" deposited to secure a transaction should be paid. A dispute arose. Instead of submitting to arbitration, the plaintiff brought suit for the fund. The court considered the whole rule concerning the ousting of courts from jurisdiction, rejected it, and held that the executory agreement was a bar to the action. Concerning this type of case, Williston writes:

"When parties are members of a trade group with common interests, there is generally no difficulty in securing the enforcement of arbitration agreements by extrajudicial methods. In many instances, provisions in trade association rules or by-laws stipulate that the members must arbitrate their disputes with each other, and give various methods of enforcing the arbitration, such as expulsion of a non-cooperative member, or fines and penalties. Often it is provided that an arbitration shall proceed *ex parte* in the event a member refuses to arbitrate. The courts, despite their reluctance in some states to enforce arbitration provisions in contracts, almost universally uphold and enforce these trade association provisions, while in other states they are given special statutory protection." 6 Williston, Contracts (1938) § 1925, p. 5384.

In *Kentucky Lodge No. 39, I. O. O. F. v. Limeback,* 9 Ky. L. Rep. 320, plaintiff sued a beneficial insurance association for sick benefits without pursuing the required contractual procedures within the order. It

was held that the executory general arbitration agreement was a bar to court action.

"There is no rule better settled or founded on better reason than that which holds that members of a voluntary association who desire to assert rights growing out of their society relationship must appeal to the tribunals created by and within the association for that purpose, and are bound by their decisions.

"The whole current of authority is to the effect that in voluntary associations, where the member can apply for the assertion of his rights or has his rights determined by a tribunal existing within the society, relief will be denied him by the judicial tribunals of the country for that reason, nor will they stop to inquire whether the action of the judicature of the society was regular or its judgment correct. * * *

"To encourage such an action would effectually destroy the cohesive power of all voluntary associations. How could a society exist if a member could select those provisions in its constitution, by-laws or rulings by which he proposes to hold the society and other members bound, and reject all the rest, and still insist upon the rights of a member?" *Kentucky Lodge, No. 39, I. O. O. F. v. Limeback,* supra.

The entire question received the fullest consideration in *Scott v. Avery,* 5 H. L. Cas. 811 (1856). This was a mutual insurance case. The contract of insurance contained a general arbitration agreement providing "that no member * * * shall be entitled to maintain any action at law or suit in equity on his policy, until the matters in dispute shall have been referred to, and decided by, arbitrators." The plaintiff sued without arbitration. The defendant interposed the executory contract for arbitration as a defense. The rule

against agreements ousting the courts of jurisdiction was fully discussed and rejected. The distinction made in many cases between general arbitration agreements and limited agreements (appraisals) was also considered and rejected. The executory agreement was held a bar to the action. In the opinion of the House of Lords written by Lord Campbell, it was held that the contract properly construed was not limited to the assessment of damages but covered "any dispute that might arise" between them.

"There is no statute against such a contract: then, on what ground is it to be declared illegal? * * * but what pretence can there be for saying that there is any thing contrary to public policy in allowing parties to contract, that they shall not be liable to any action until their liability has been ascertained by a domestic and private tribunal, upon which they themselves agree? Can the public be injured by it? It seems to me that it would be a most inexpedient encroachment upon the liberty of the subject if he were not allowed to enter into such a contract. * * * Is there any thing contrary to public policy in saying that the company shall not be harassed by actions, the costs of which might be ruinous, but that any dispute that arises shall be referred to a domestic tribunal, which may speedily and economically determine the dispute? I can see not the slightest ill consequences that can flow from such an agreement, and I see great advantage that may arise from it. Public policy, therefore, seems to me to require that effect should be given to the contract. * * *

"Now, in this contract of insurance it is stipulated, in the most express terms, that until the arbitrators have determined, no action shall lie in any Court whatsoever. That is not ousting the Courts of their jurisdiction, because they have no jurisdiction whatsoever, and no cause of action

accrues until the arbitrators have determined.''
*Scott v. Avery,* supra.

Concerning the rule against ouster of the courts, the opinion added:

"It probably originated in the contests of the different Courts in ancient times for extent of jurisdiction, all of them being opposed to any thing that would altogether deprive every one of them of jurisdiction." *Scott v. Avery,* supra.

*Scott v. Avery* is the leading case in England and is frequently cited here. The decision goes beyond the question involved in the case at bar for it involves the legal effect of executory general arbitration agreements, whereas we are concerned with an executed award under the arbitration agreement.

The numerical weight of authority still appears to sustain the statement by Williston to the effect that a general arbitration agreement which provides for the determination of ultimate legal liability "encounters the common-law hostility previously alluded to and is held illegal." While there is a clear conflict of authority, the prevailing rule of hostility has been applied in mutual benefit association cases. 6 Williston, Contracts (1938) §§ 1725 and 1921A. But, as we shall indicate, the rule of judicial hostility does not and should not apply to executed arbitrations or awards.

The illustrations appended to the Restatement of Contracts § 550 indicate a definite progress away from the rule of common-law hostility:

"1. A and B enter into a building contract which provides as one of its terms that B's architect C shall be the sole judge of whether A's work is in accordance with the plans and specifications. The

provisions for determination by C of the correctness of the work is legal and binding on the parties.

"2. A and B mutually agree to arbitrate a dispute that has arisen between them. The agreement is a legal contract, but it will not be specifically enforced, and no more than nominal damages can be recovered for breach of it. Nor is it a bar to an action on the dispute to which the agreement related.

"3. A and B enter into a contract requiring mutual performances during the ensuing year, and it is provided in the contract that any disputes between the parties arising under it shall be submitted to arbitration. The provision for arbitration is not illegal, but it will not be specifically enforced, nor will breach of it be a bar to an action for breach of the contract, nor give rise to a right for more than nominal damages for breach of the agreement to arbitrate." Restatement of Contracts § 550, Illustrations 1 to 3.

Concerning executory general arbitration agreements, the Minnesota court said:

"The historical and only basis for the opinion that executory agreements to arbitrate all issues to arise under a contract are void, as against public policy, is open to serious question. There is eminent authority (Lord Campbell, in Scott v. Avery, 25 L. J. [N. S. Exch.] 308), that the rule was the product of judicial jealousy rather than judicial reasoning. He said that it arose in the time when 'the emoluments of the Judges depended mainly, or almost entirely, upon fees.' In those days they had no fixed salary and so 'there was great competition to get as much as possible of litigation into Westminster Hall, and a great scramble * * * for the division of the spoil.' In consequence, 'they had great jealousy of arbitrations. * * * Therefore they said that the Courts ought not to be ousted of

their jurisdiction, and that it was contrary to the policy of the law to do so.'

"To that doctrine, its questionable origin aside, there are two destructive objections:

"First, there appears never to have been any factual basis for holding that an agreement to arbitrate 'ousted' jurisdiction. It has no effect upon the jurisdiction of any court. Arbitration simply removes a controversy from the arena of litigation. It is no more an ouster of judicial jurisdiction than is compromise and settlement or that peculiar offspring of legal ingenuity known as the covenant not to sue. Each disposes of issues without litigation. One no more than the other ousts the courts of jurisdiction. The right to a jury trial, even in a criminal case, may be waived. So, also, may the right to litigate be waived." *Park Construction Co. v. Independent School Dist.*, 209 Minn. 182, 296 N. W. 475, 135 A. L. R. 59.

In that case the Supreme Court of Minnesota overruled all earlier cases which had followed the old rule. See also *United States Asphalt Refining Co. v. Trinidad Lake Refining Co.; Vitaphone Corporation v. Electrical Research Products, Inc.*, both supra; *Matter of Berkowitz v. Arbib & Houlberg*, 230 N. Y. 261, 130 N. E. 288, (opinion by Cardozo, J.); *President, etc., of Delaware & Hudson Canal Co. v. Pennsylvania Coal Co.*, 50 N. Y. 250; *Henry v. Lehigh Valley Coal Co.*, 215 Pa. 448, 64 A. 635.

In direct opposition to the old rule of judicial hostility to executory general arbitration agreements are the following cases in which such agreements were held to constitute a bar to any action brought in disregard of the arbitration clauses: *Kentucky Lodge, No. 39, I. O. O. F. v. Limeback; Pacaud v. Waite; Scott v. Avery*, all supra.

As being contrary to the rule of judicial hostility, Williston cites "the important case" of *McCullough v. Clinch-Mitchell Constr. Co.*, supra. In that case a contract for the construction of a railroad right of way contained a general arbitration agreement collateral in form and covering all questions of liability. The arbitration procedure was not followed, and it was held that the agreement for arbitration was a defense to the action on the construction contract. The case contains an exhaustive review of the entire question and is of persuasive force. Concerning that decision, Williston says:

> "Arbitration, however, was enforced as a condition precedent, and the clause would otherwise have been inoperative but the dispute involved was factual in its nature, and fairness on the particular facts indicated the need for the decision." 6 Williston, Contracts (1938) § 1921A, p. 5374, *note*.

The foregoing review of the cases casts serious doubt upon the entire "ousting of jurisdiction" doctrine.

It is unnecessary to decide whether we will follow the cases holding that executory arbitration agreements are revocable, but we do hold that whether revocable or not, if fairly made, they are not illegal. Restatement, Contracts § 550. We quote from Comment (a) under the above section: "The authority of the arbitrators is revocable by either at any time before an award is made, and though the revocation is a violation of the agreement, the injured party is without substantial redress." See 6 Williston, Contracts (1938) § 1919, note 3, and Sturges, Commercial Arbitrations and Awards § 15, p. 45. Some sound reasons may militate against the enforcement defensively of some

executory agreements for arbitration. But if such agreements are not illegal on the ancient grounds of public policy, then there is no sound reason for holding that an executed arbitration agreement is void as against public policy.

It is significant that many of the cases cited as supporting the rule that an executory arbitration agreement may not be employed as a bar to action have pointed out the clear distinction between such cases and those which involved executed arbitrations.

In *Vitaphone Corporation v. Electrical Research Products, Inc.,* supra, the Delaware court, feeling itself bound by authority, held that a party to a general arbitration agreement might revoke it and bring suit at any time before the award was made even though, as in that case, the parties had spent $450,000 in the unfinished arbitration procedure. The court said:

"The respondent cites two Delaware cases in support of his position, viz.: Crumlish v. Wil. & Western R. Co., 5 Del. Ch. 270 and Stewart v. Grier, 7 Houst. 378, 32 A. 328, 329. Upon examination it is found that in both of those cases an award had been made and the Court held that the parties to the arbitration were bound by the award, which in the absence of fraud was final. The question was not the right to revoke the agreement, but the right to repudiate the decision. This fact differentiates the last mentioned cases from the one before the Court in which no award has been made. It should be borne in mind in considering this question that there is a difference between the power of a party to revoke an agreement to arbitrate, and his power to repudiate an award made in pursuance of the agreement. This difference is recognized by the authorities. In the case before the Court the arbitration still rests in agreement. There has been

no award—no decision. No award is set up in the plea.

"The failure to distinguish between the effect of an arbitration that rests in agreement, and one in which an award has been made shows that some of the decisions relied on by the respondent are not here in point. In the one case the controversy is undecided, in the other it is in a sense res adjudicata." *Vitaphone Corporation v. Electrical Research Products, Inc.,* supra.

In *Eminent Household of Columbian Woodmen v. Payne,* supra, the court said:

"In such cases, the law will not interfere, *but will leave the parties to their own good pleasure whether they will or will not keep such agreement.*" (Italics ours.)

In *Pepin v. Societe St. Jean Baptiste,* supra, the court said:

"It would be idle to compel a party to enter into an arbitration which he can forthwith revoke, and which, in order to preserve his rights, *he must revoke before an award is made.*" (Italics ours.)

■ We come now directly to the question of the conclusiveness of executed arbitration agreements. Here we think the weight of authority sustains their validity and conclusiveness, subject to well-recognized exceptions. A common-law award is, of course, not self-enforcing. An action at law must be brought upon the award. The court will enter judgment upon it, but not if the award was fraudulent or arbitrary or the result of gross mistake of fact, or if it appears that the arbitrators intended to follow the law and then based the award on a clear misapprehension concerning

the law. *Howe v. Patrons' Mutual Fire Ins. Co.*, 216 Mich. 560, 185 N. W. 864.

■ Concerning general arbitration agreements, the New York court said: "An agreement of this character induced by fraud, or overreaching, or entered into unadvisedly through ignorance, folly or undue pressure, might well be refused a specific performance, or disregarded, when set up as a defense to an action." *President, etc., of Delaware & H. Canal Co. v. Pennsylvania Coal Co.*, supra. Awards may be impeached in equity for similar reasons, but not for mere mistake. In the absence of equitable grounds for impeachment, the award is conclusive. With such power vested in the courts to scrutinize an award and subject it to the test of equitable principles, it is idle to say that the court is ousted of jurisdiction.

In the Restatement of Contracts § 550, Comment (a), it is said: "If, however, the bargain to arbitrate is carried out and an award made, the award is binding." Illustration 4 is as follows:

"A and B enter into a building contract which provides that C shall have power to determine whether the contract has been broken by either party, and in case of breach shall assess damages caused thereby. The provision is no bar to an action by either A or B, but if, in case of dispute, they appear before C and present evidence and argument and C makes an award, the award is binding." Restatement, Contracts, supra.

And again:

"A contractual duty or a duty to make compensation is merged by an award on the subject of the duty duly made by arbitrators, unless the award

merely fixes an amount of money owing under the pre-existing duty. In that event the pre-existing duty is not merged, but the award precludes recovery in excess of the sum awarded." Id. § 445.

To the same effect, see 6 Williston, Contracts (1938) § 1927, p. 5387.

We quote from Sturges on Commercial Arbitrations and Awards, a standard authority:

"There is nearly uniform approval of the general proposition that the power to revoke a future disputes clause or provision under common law rules is extinguished when an award is duly rendered under such an agreement. More particularized, this proposition may be said to mean that an award rendered under such a clause or provision is not less conclusive and enforceable than other awards merely because it is rendered in an arbitration which is had under a revocable future disputes agreement before it is revoked. Statements in the common law cases that such revocable agreements are 'invalid,' that they are 'not binding on the parties,' or that they are 'unenforceable' or 'void,' lose their significance in this connection." Sturges, Commercial Arbitrations and Awards § 18, pp. 57, 58.

The following opinions, not including mutual benefit society cases, support the proposition that executed awards based on arbitration agreements are conclusive: *Jacob v. Pacific Export Lumber Co.*, 136 Or. 622, 297 P. 848; *Friberg v. Elrod*, 136 Or. 186, 296 P. 1061; *Mayer v. East Side Logging Co.*, 130 Or. 341, 278 P. 957, 280 P. 343; *Maroulas v. State Ind. Acc. Comm.*, 117 Or. 406, 244 P. 317; *Johnson v. Prineville*, 100 Or. 105, 196 P. 821; *Red Cross Line v. Atlantic Fruit Co.*, supra; *Memphis Trust Co. v. Brown-Ketchum Iron*

*Works,* 166 F. 398; *Thornton v. McCormick,* 75 Iowa 285, 39 N. W. 502; *Park Construction Co. v. Independent School Dist.,* supra.

In *Meyers & Co. v. Pacific Construction Co.,* 20 Or. 603, 27 P. 584, a construction contract provided that "any dispute or difference between the company and the contractors under this contract as to the classification of work, or otherwise, shall be referred to the decision of the divisional engineer of the company, whose decision shall be final and conclusive on both parties to such dispute or difference." It was held that the agreement was valid and, if executed, would be conclusive and would constitute a bar to action on the contract. The court said that the plaintiff must show compliance with the agreement or an excuse for non-compliance.

The decision in *Ball v. Doud,* 26 Or. 14, 37 P. 70, is involved in contradictions. It intimates that executory general arbitration agreements are invalid as ousting the court of jurisdiction, but the opinion also refers to the Meyers case, supra, and says "and thus the distinction in Scott v. Avery, was established as the rule of interpretation in this state." It will be recalled that *Scott v. Avery* involved an executory general arbitration agreement which was held to be a bar to the action.

In *Friberg v. Elrod,* supra, a construction contract contained a general arbitration agreement. All disputes were to be decided by the engineer and his decision was to be binding. In this case the court went a long way for it not only held that the final certificate of the engineer, in the absence of fraud or the like, is binding on both parties to the contract, but it also said: "Such stipulations are of the very essence of the

contract, and such agreement *is not subject to revocation by either party."* (Italics ours.)

The cases most closely resembling the one at bar are those involving claims against mutual benefit associations. In the following cases, executed awards were held conclusive where they were made pursuant to general arbitration agreements contained in the contractual by-laws of the association: *Rood v. Railway Passenger & Freight Conductors' Mut. Ben. Ass'n,* 31 F. 62; *Wilkins v. Brotherhood of Railroad Trainmen,* 266 Ky. 377, 99 S. W. (2d) 196, (dictum) ; *Reager's Admx. v. Pennsylvania Co.,* 169 Ky. 479, 184 S. W. 395; *Durkin v. Brotherhood of Locomotive Firemen and Enginemen,* 170 Md. 562, 185 A. 322, 104 A. L. R. 1501; *Donnelly v. Supreme Council Catholic Benev. Legion,* 106 Md. 425, 67 A. 276, 124 Am. St. Rep. 499; *Canfield v. Great Camp of Knights of the Maccabees,* 87 Mich. 626, 49 N. W. 875, 13 L. R. A. 625, 24 Am. St. Rep. 186; *Van Poucke v. Netherland St. Vincent de Paul Society,* 63 Mich. 378, 29 N. W. 863; *Howe v. Patrons' Mutual Fire Ins.,* supra; *McAlees v. Supreme Sitting, Order of the Iron Hall,* (Pa. 1885), 13 A. 755.

Speaking of mutual benefit cases, we find the following in Couch, Cyclopedia of Insurance Law, Vol. 8, § 1975d, page 6536:

"In the absence of any allegations of fraud, or of action upon the part of the society which is contrary to its rules and by-laws, a decision of the society, or its authorized tribunal or representative, rejecting a claim made on behalf of a member, is final. At least it has been so held in an action upon an endowment certificate upon the life of the plaintiff's husband, where the by-laws of the society provided that a decision made by the society in passing upon a claim should be final, and that no

suit should be maintained in law or equity upon such claim, the certificate having provided for payment to the widow as beneficiary, and she having presented her claim to the society, which rejected it." Couch, Cyclopedia of Insurance Law, supra.

As opposed to the view which we have taken, the following cases have declared that executed general arbitration agreements are void: *Employee's Ben. Ass'n of Calumet & Ariz. Mining Co. v. Johns,* 30 Ariz. 609, 249 P. 764, 51 A. L. R. 1414; *Conant v. Arsenault,* 119 Me. 411, 111 A. 578; *Wortman v. Montana Central Railway Co.,* supra; *Baltimore & O. R. R. Co. v. Stankard,* 56 Ohio St. 224, 46 N. E. 577, 49 L. R. A. 381, 60 Am. St. Rep. 745; *Zanesville Lodge, etc. v. Fluharty,* 8 Ohio App. 1.

The case of *Conant v. Arsenault* is important in connection with paragraph 1 of the Restatement of Contracts, § 551, which purports to declare illegal general arbitration agreements when phrased as conditions precedent. We think it was not the intention of the authors to declare such agreements void if executed, but only to hold them unenforceable when executory.

In the notes to the Restatement of Contracts, Proposed Final Draft No. 11, at page 211, the reporter, Professor Williston, refers to *Conant v. Arsenault,* supra. In that case a contract for the sale of lumber contained a general arbitration agreement. The agreed procedure was followed and an award was made. It was held that the award was void. In the note to the Restatement, the reporter says:

"In Conant v. Arsenault, 119 Me. 411, 111 Atl. 578, the court went so far as to hold that an award

actually made was invalid though the proceedings before the arbitrator were regular, because the parties in their original contract had provided for an arbitration of all disputes that might arise under the contract. The Court cites no authority, however, for the position that an arbitration voluntarily entered into, and properly carried out is invalidated by such a contract preceding the arbitration. *The conclusion of the Court cannot be accepted.*" Restatement, Contracts, Explanatory Notes (Proposed Final Draft No. 11, 1932) §§ 550, 551. (Italics ours.)

■ Consideration of the authorities compels us to repudiate the theory on which the plaintiff has argued his case. The rule that "parties cannot stipulate beforehand to submit their rights generally to the judgment of a designated third party for a final determination" is unsound. The rule that such agreements oust the courts of jurisdiction has an unworthy genesis, is fallacious in reasoning and has been followed merely because of ancient precedent.

We think Article I, Section 10, of the Oregon Constitution has no bearing upon the validity of executed arbitration agreements. *School District No. 48 v. School District No. 115,* 60 Or. 38, 118 P. 169; *Matter of Berkowitz v. Arbib & Houlberg,* supra. If the broad rule for which plaintiff contends were adopted upon constitutional grounds, it would not only make all general common law arbitration agreements invalid but would render arbitration statutes of this and many other states unconstitutional.

■■ An executed award is analogous to an accord and satisfaction and may be pleaded as such in defense of the original cause of action. The constitutional pro-

vision that "every man shall have a remedy * * * for injury done him" is no more violated by such an award than by any covenant not to sue, accord and satisfaction, compromise and settlement, or agreement to confess judgment. *Pacaud v. Waite,* supra. The law creates courts for the redress of injuries; it does not compel disputants to use them. An executed common law award is accorded the benefits of the doctrine of res judicata in much the same manner as the judgment of a court. *Jacob v. Pacific Export Co.,* 136 Or. 622, 297 P. 848; *Hooper v. Pennick,* 102 Or. 382, 202 P. 743; *Olston v. Oregon Water Power & Ry. Co.,* 52 Or. 343, 96 P. 1095, 97 P. 538, 20 L. R. A. (N. S.) 915; 6 C. J. S., Arbitration and Award § 97, p. 243. And see 6 Williston, Contracts § 1927, pp. 5387-5389.

In *Park Construction Co. v. Independent School District,* supra, an arbitration agreement was made pursuant to the Minnesota statute, but the statutory procedure was not followed and the executed agreement for arbitration was held valid at common law.

The court said:

" * * * If there ever was public policy against agreements to arbitrate, it has disappeared. Now, the policy of this state, as declared by the legislature, Mason's Minn. St. 1927, § 9513, et seq., and applied by this court, Daniels v. Willis, supra, and Larson v. Nygaard, 148 Minn. 104, 108, 180 N. W. 1002, favors arbitration.

"Public policy, where the legislature has spoken, is what it has declared that policy to be. So far as the question of policy is concerned, our statute settles the matter. It not only establishes the process of statutory, but confirms that of common-law, arbitration." *Park Construction Co. v. Independent School Dist.,* supra.

The statute of Oregon provides:

"A provision in any written contract to settle by arbitration a controversy thereafter arising out of such contract, * * * or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall, provided the arbitration be held in the State of Oregon, be valid * * * save upon such grounds as exist at law or in equity for the revocation of any contract." O. C. L. A. § 11-602.

In *Mayer v. East Side Logging Co.*, supra, a logging contract contained a general arbitration agreement. The award was made by the engineer pursuant to the contract. It was held valid and binding. The Court said:

" * * * and considering the present favorable attitude towards arbitration, as is evidenced for instance by 1925 Session Laws, Chapter 186, a stipulation of the kind now before us would seem to be in harmony with the trend of public policy." *Mayer v. East Side Logging Co.*, supra.

Statutes in furtherance of submission agreements have been made in forty-six states. In thirteen states the statute makes all arbitration clauses enforceable. See 6 Williston, Contracts §§ 1919 and 1920. Such statutes have been properly held to indicate a changed public policy relative to arbitration agreements even in cases involving common-law arbitrations in which the statutory procedure has not been followed. As said by Williston: "Enforceable arbitration statutes where enacted certainly indicate a modification of policy." 6 Williston, Contracts § 1725, p. 4872.

Again it has been said:

"I do not say that the policy of this State is opposed to the settlement of controversies by arbitration. Such a policy would be unfortunate in these times when settlements without litigation should be encouraged in every way. The tendency of the law is now in that direction perhaps more than ever before. *In the Stewart v. Grier Case,* supra, it was said:

" 'The tendency of modern jurisprudence is to give force, conclusiveness, and effect to all awards where there is no corruption or misconduct on the part of the aribtrators.' " *Vitaphone Corp. v. Electrical Research Products Co.,* supra.

We have carefully considered the case of *Lane v. Brotherhood of Locomotive Enginemen & Firemen,* 157 Or. 667, 73 P. (2d) 1396, not cited in the briefs. In that case the plaintiff was the holder of a certificate from the defendant, a fraternal benefit society, entitling him to receive monthly compensation when totally and permanently disabled. He suffered injuries and claimed the benefits. The plaintiff duly exhausted all remedies of appeal within the order. His claim was rejected and he then brought suit. Judgment for the plaintiff was affirmed. The arbitration agreement in that case was wholly unlike the one at bar. It was expressly provided that if the applicant is "dissatisfied and desires to bring action against the Brotherhood, he shall first exhaust all remedy by appeal provided by the laws of the Brotherhood, and thereafter he shall, *before bringing action,* give * * * notice * * * of his intention * * * ." (Italics ours.)

This court said: "It is clearly implied from the language used, if not expressly stated, that plaintiff

has a right to apply to the courts." In view of the express authority to sue, the court very naturally construed the provision that the decision of the board of directors should be "final," as meaning only final within the order. The court was correct in holding that the decision of the arbitral tribunal of the order was no bar to the action, because the contract clearly showed that no bar was intended. There was neither need nor justification for the dictum in which the court intimated that agreements making the decision of the arbitrators final and conclusive are void because they oust the courts of jurisdiction. The dictum is expressly disapproved.

Nor have we overlooked the Restatement of Contracts § 550, Illustration 5, which reads as follows:

> "A is a member of B, a mutual benefit association. It is provided in the certificate of insurance issued by B to A that the decision of the Supreme Council of B as to a member's rights to benefits shall be final. The provision is illegal." Restatement, Contracts, supra.

The illustration states the rule which has been frequently applied to executory general arbitration agreements. It does not specifically apply to executed awards, and, in view of the authorities cited and of other provisions in the Restatement, we think it does not so apply.

Here again the statement from Sturges on Commercial Arbitrations and Awards concerning executed awards becomes pertinent:

> "Statements in the common law cases that such revocable agreements are 'invalid,' that they are

'not binding on the parties,' or that they are 'unenforceable' or 'void,' lose their significance in this connection." Sturges, Commercial Arbitrations and Awards, at pp. 57, 58.

In *N. P. Sloan v. Standard Chemical & Oil Co.*, 256 F. 451 (C. C. A. 5th, 1918), the court said:

"It may be assumed that the pleaded arbitration agreement was not a binding or enforceable one, and that its existence prior to the award constituted no obstacle to a resort to the courts by either of the parties to it for the settlement of any difference or dispute arising between them. Though a submission to arbitration in pursuance of the agreement was revocable at any time before the making of an award, it does not follow that an award made under an unrevoked submission pursuant to the agreement and the submission is without binding effect. After an agreement to arbitrate has been executed or consummated by the making of an award following a submission by both parties, which was unrevoked when the final action of the arbitrators was taken, the award so made is not deprived of binding effect by the circumstance that before it was made the arbitration agreement did not stand in the way of either party resorting to the courts for the settlement of the controversy. Where parties submit matters in controversy to arbitration, and an award is made pursuant to the agreement of submission, such award is final and binding on the parties, unless the arbitrators are guilty of fraud, partiality, or other improper conduct in making it." *N. P. Sloan Co. v. Standard Chemical & Oil Co.*, supra.

It follows from the authorities cited that, even if we should adhere to the ancient rule of judicial hostility to executory arbitration agreements, an executed award should, nevertheless, be upheld.

■ As said by Williston, supra, it is difficult to distinguish between general and limited arbitration agreements. Here there was a single question of fact for decision: Was the plaintiff injured in a fight or a brawl? In this the contract seems to resemble a limited arbitration agreement. But decision of that single and simple question would in effect determine liability and the case must be classified as involving a general arbitration agreement. (Compare Williston's comment, supra, on *McCullough v. Clinch-Mitchell Construction Co.,* supra.) Being a general arbitration agreement, it becomes unnecessary to determine whether it was or was not revocable. If the old rule of the common law shall in the future be followed, then general arbitration agreements such as this will be held revocable at any time before the award is made.

Our decision in *Anderson v. Hartford Accident & Indemnity Co.,* supra, would not militate against such a ruling. That case involved only a limited arbitration agreement which may at common law be made a condition precedent to court action and thus irrevocable.

■ If in the light of changed public policy the more modern decisions shall be followed, then it may be that the plaintiff could not have revoked the agreement even before the award. We limit this decision to holding that an executed award is binding and conclusive unless, as indicated in the Restatement, the specific agreement was essentially unfair and subject, of course, to the rules concerning impeachment of awards in general. We concede that an arbitration agreement induced by fraud, overreaching, undue pressure or essential unfairness might infect the consummated award with invalidity. This is not to approve the outworn, broad, general doctrine of ouster of jurisdiction,

but rather to apply equitable tests to the case. In applying these tests to the case at bar, we find the judicial scales nearly but not quite in balance.

 The fact that agreement to the by-laws of the Hospital Department was required of all employees suggests that the parties may not have bargained at arms length, but membership in the Department was obviously for the benefit of the employees who stood to profit not only by their own but also by the contributions of the company to the fund, contributions which amount to some $30,000 a year. The Hospital Department was established for a purpose highly favored in modern times. It is true that the benefits of the Hospital Department are not dispensed without consideration moving from the plaintiff, but it is nevertheless a benevolent organization.

In *Union Pac. Ry. Co. v. Artist,* 60 F. 365, 23 L. R. A. 581 (C. C. A. 8th, 1894), the plaintiff sued the defendant company for malpractice by physicians in its hospital department. In an opinion by Judge Sanborn, judgment for the plaintiff was reversed. Referring to facts almost identical to the case at bar, the court said:

> "Under the evidence in this case, the medical department and hospitals of the Union Pacific Railway Company fall fairly within this rule, and the reasons that support the rule apply to this case with all their force. The test which determines whether such an enterprise is charitable or otherwise is its purpose. If its purpose is to make profit, it is not a charitable enterprise. If it is to heal the sick and relieve the suffering, without hope or purpose of getting gain from its operation, it is charitable. Tried by this test, the hospitals and medical department of this company are a great

public charity. They are supported by the voluntary contributions of this great corporation and of its employees, without the purpose to profit thereby. We say by their 'voluntary contributions' not unadvisedly. We have not failed to notice that the defendant in error testified that the contribution of 25 cents a month made by each employe was a compulsory assessment, and that the company took it out of the pay of such employe. But how it could be compulsory does not appear. If it was a part of the pay of the employe, the company could not lawfully take it out without his consent. If he did not consent, then he did not contribute, and the company still owes him the amount of this assessment. If he did consent, he voluntarily contributed the amount of his assessment. Whatever may be said of the contributions of the employe, there is no question whatever but that the gift of $2,000 to $4,000 per month made by the company was purely voluntary and charitable. These contributions of 25 cents per month from each employe, and of from $2,000 to $4,000 per month from the company, constituted a trust fund devoted to the purpose of furnishing hospital accommodations, physicians, and surgeons for the relief of the sick and injured employes without charge or expense to them." *Union Pac. Ry. Co. v. Artist,* supra.

It may be added that for all we know the individual contracts of employment may have been made pursuant to a collective bargaining procedure without inequality of bargaining power.

Well reasoned cases have held that agreements which vest in a representative of one of the parties the power to arbitrate disputes violate the rule that no man shall be a judge of his own case. See *Employee's Ben. Ass'n of Calumet & Ariz. Mining Co. v. Johns,* supra.

The Chief Surgeon and General Manager were of-

ficers of the defendant company, but their duties under the arbitration agreement were to administer for the benefit of all the contributing employees the assets of an express trust from which the defendant could derive no profit and which as such was subject to whatever powers courts of equity exercise in supervising the administration of a trust. This court has already recognized the right of parties in building and construction contracts to confer upon architects and engineers employed by the owner the power to make final awards.

In *Williamson v. North Pacific Lumber Co.*, 42 Or. 153, 70 P. 387, 532, we said:

"Where one of the parties to a contract, either before or after a dispute concerning its performance arises, agrees that the other party shall settle or determine the question in controversy, the decision made is binding and conclusive in the absence of fraud." *Williamson v. North Pacific Lumber Co.*, supra.

It is a recognized rule that all arbitrators should be impartial. If it be still contended that the Chief Surgeon and the General Manager were biased because of their relationship to the defendant, the answer is given by Williston:

"It is clear that if an arbitrator is biased or prejudiced, his award will not stand. He is properly a disinterested judge and not an advocate. However, if the contract provides for the selection of arbitrators whom the parties, because of the circumstances, should have known were biased, they may not later challenge the award on that ground. In general, a party having knowledge of facts possibly indicating bias or prejudice on the part of an arbitrator cannot remain silent and thereafter on that ground object to his decision." 6 Williston, Contracts § 1923A.

■ This court applied that rule in *Mayer v. East Side Logging Co.,* supra, when the court by Justice ROSSMAN said:

> "A judge must have no affiliations with either party, because our system of jurisprudence contemplates a disinterested judicial officer. But, as was well pointed out in the much cited case of Range v. Great Western R. R. Co., 5 H. L. Cas. 88, a contractor who enters into a stipulation of this kind is fully aware of the engineer's employment, and realizes that the award will really be that of the employer." *Mayer v. East Side Logging Co.,* supra.

And see Sturges, Commercial Arbitrations and Awards § 148. By agreeing that the award should be made by the named officers, the plaintiff has waived objection to any apparent bias.

Many questions might arise in the administration of the hospital fund which would require technical medical knowledge not involved in this case. It must be remembered that the choice is not between the decision of arbitrators on the one hand and a skilled, technical, scientific tribunal on the other. The choice is between arbitrators and a jury. "The law should provide a method of enforcing this business method of escape from the inexpert jury system with the concomitant expense, delay, and technicality of trial * * * ." 6 Williston, Contracts § 1922.

In *Van Poucke v. Netherland St. Vincent de Paul Society,* supra, the court said:

> "In a society comprising a numerous membership, deriving its revenues from small monthly contributions, it is of the utmost importance that its business should be carried on inexpensively, and with a proper regard to the object sought to be ac-

complished. It is necessary that there should be some mode of determining the question of when relief should be given and denied, and the method provided in the by-law seems well adapted to the circumstances and needs of such a society." *Van Poucke v. Netherland St. Vincent de Paul Society,* supra.

Having weighed the serious consideration pro and con, we have concluded that, whether or not the plaintiff could have revoked the agreement before the award was made, he cannot do so now. The evidence establishes that the Chief Surgeon and the General Manager each conducted a fair and thorough, though informal, investigation into the facts. There is no evidence of bad faith, bias or prejudice. The information upon which they acted supports the conclusion that plaintiff was injured in a fight or brawl. Their decision was final. Defendant was entitled to a directed verdict. Judgment for the plaintiff is reversed, and the case is dismissed.

BELT, C. J., dissents.